CASE NO. 10-2646

_____

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____


**MARK H. SHAPIRO, TRUSTEE,**
PLAINTIFF-APPELLANT,
v.
**NIBRAS JAMIL,**
DEFENDANT-APPELLEE,

and

**MARK H. SHAPIRO, TRUSTEE,**
PLAINTIFF-APPELLANT,
v.
**JOANNA THOMAS,**
DEFENDANT-APPELLEE.

_____

Appeal from the United States District Court
Eastern District of Michigan (Adv. Case Nos. 09-06259 and 09-06260)
_____

**SECOND CORRECTED BRIEF OF PLAINTIFF-APPELLANT,
MARK H. SHAPIRO, TRUSTEE**

_____

**NEUMAN ANDERSON, PC**
**Kenneth F. Neuman (P39429)**
**29100 Northwestern Hwy, Ste. 260**
**Southfield, MI 48034**
**T: (248) 352-5522**
**E-mail:**
**kneuman@neumananderson.com**

**MYERS & MYERS, PLLC**
**Kelly A. Myers (P49143)**
**Christopher G. Bovid (P68265)**
**915 N. Michigan Avenue**
**Howell, MI  48843**
**T: (517) 540-1700 / F: (517) 540-1701**
**E-mail: cbovid@myers2law.com**

Attorneys for Mark H. Shapiro, Chapter 7 Trustee

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Pursuant to 6TH CIR. R. 34(a), Appellant, Mark H. Shapiro, Chapter 7 Trustee ("Appellant"), requests that this Court docket this appeal for oral argument. Appellant asserts that oral argument will afford counsel the opportunity to address any questions which the Court may have concerning the lower court's record and to clarify the specifics of the parties' respective positions on appeal.  Appellant contends that oral argument will be beneficial to the parties and to the Court, and that the decision process will be significantly aided by this Court's allowance of oral argument.

# TABLE OF CONTENTS

Statement in Support of Oral Argument .................................................................. ii

Statement of Jurisdiction................................................................................................v

Statement of the Issues.................................................................................................v

Statement of the Case .................................................................................................1

Statement of Facts.........................................................................................................1

Statement of the Standard of Review.......................................................................10

Summary of the Argument........................................................................................11

Argument........................................................................................................................12

I.. Appellant's Motion for Summary Judgment Should Have Been Granted As There  Were No Issues Of Fact Regarding Debtors' Fraudulent Transfers Because Appellees Were Estopped, As A Matter Of Law, From presenting Evidence Contrary To The Representations In Their Personal And business Federal Tax Returns Filed In 2003, 2004, 2005, and 2006 ...........................12

A. Michigan case law holds that a party ie equitable stopped from contradicting the information in that party's previously filed and sworn tax returns because contradicting the information on the tax returns is an admission of fraud against the government...............................................14

B. Appellees' evidence was inappropriately considered by the Bankruptcy Court and should not have been used to create "material questions of fact." ...........................................................................................................16

C. The only evidence properly considered by the Bankruptcy Court unequivocally established that the Debtors fraudulently transferred their interest in TBI Properties to Appellees. ....................................................16

II. The Bankruptcy Court Committed Clear Error In Granting Appellees' Motion for Judgment On Partial Findings Because The Great Weight of the Evidence Presented at Trial Demonstrates Appellant's Fraudulent Transfer

Claim, and Because As A Matter of Michigan Law, By Managing the LLC, the Debtors Are Deemed To Be The members (owners) Thereof ................20

  A. The Bankruptcy Court Ignored the Great Weight of the Evidence At Trial Establishing the Elements of Appellant's Claims ...................................21

  B. The Debtors were the legal owners of TBI as a matter of law under Michigan's Limited Liability Company Act. ..........................................26

III.  The Bankruptcy Court Committed Clear Error and Abused Its Discretion When It Found the Debtors' and the Appellants' Testimony <u>Credible</u> After Also Finding that Defendant Nibras Jamil and Debtor Walter Jamil Intentionally <u>Committed Perjury</u> During Trial, and After Having Entered a Judgment for Non-Dischargeability Against Each of the Debtors as a Result of Fraud, and After Each of the Debtors had Previously Testified Under Oath that They Were Still the Owners of TBI Years after 2003. ...............28

Conclusion ...........................................................................................30

Addendum - Designation of Relevant Bankruptcy Court and District Court Documents to be Included in the Record on Appeal .......................33, 34, 35, 36, 37

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Armistead v. Vernitron Corp*., 944 F.2d 1287 (6th Cir. 1991) ................................13

*Eberhardt v. Comerica Bank*, 171 B.R. 239 (E.D. Mich. 1994) ...........................21

*Hersch v. United States,* 719 F.2d 873, (6th Cir. 1983) .........................................21

*Hughes v. Almena Twp*. 771 N.W.2d 453 (Mich. App. 2009)................................13

*In re Petty*, 538 F.3d 431 (6th Cir. 2008) (citations omitted) ...................................11

*Johnson v. United States Postal Serv.,* 756 F.2d 1461 (9th Cir. 1985) ...............8, 21

MICH. COMP. LAWS 566.31 ......................................................................................1

*Shapiro v. Matouk (In re Hayes)*, 322 B.R. 644 (2005) .........................................22

*Watling v. Watling,* 127 Mich. App. 624; 339 NW2d 505 (1983) .........................14

### Statutes

11 U.S.C. § 544(b) ..................................................................................................20

11 U.S.C. § 548.................................................................................. 1, 17, 18, 19, 20

MCL § 450.4401 .....................................................................................................27

MCL § 566.34 .........................................................................................................19

MCL 750.423 ..........................................................................................................28

MCL§ 566.31 ..........................................................................................................17

### Rules

Bankruptcy Rule 7052 .............................................................................................20

Fed. R. Civ. P. 52(c).................................................................................................1

FRE 801 ..................................................................................................................13

### Treatises

4 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 2000, p 2281 ...........29

## STATEMENT OF JURISDICTION

Pursuant to 28 U.S.C. § 1291, this Court has appellate jurisdiction over this matter.  Pursuant to 28 U.S.C. § 157(b)(2), the consolidated adversary proceedings below were core proceedings.  On December 14, 2010, pursuant to Fed. R. App. P. 4(a), Appellant filed a timely Notice of Appeal of the District Court's November 15, 2010 final judgment and November 15, 2010 order affirming the Bankruptcy Court and disposing of all parties' claims.  Appellees have not filed any cross appeal.

## STATEMENT OF THE ISSUES

I.    Did the District Court err in affirming the Bankruptcy Court's error as a matter of law in denying Appellant's Motion for Summary Judgment because the Bankruptcy Court found, contrary to established Michigan case law, that Appellees were not estopped from contradicting the information represented on the subject business's tax returns and that genuine issues of material fact existed?

- Appellant answers, "Yes."
- Appellees will answer, "No."

II.   Did the District Court err in affirming the Bankruptcy Court's clear reversible error when the Bankruptcy Court granted Appellees' oral motion for judgment on partial findings where the Appellant presented compelling evidence proving every element of each claim raised against Appellees in the complaint?

- Appellant answers, "Yes."
- Appellees will answer, "No."

a.  Did the District Court err in affirming the Bankruptcy Court's error as a matter of law and/or abuse of its discretion when the Bankruptcy Court ruled that the Appellees were not estopped from arguing that

their respective debtor husbands each transferred his 50% ownership interest in a business to Appellees in 2003, when the Appellees' and debtors' respective joint tax returns filed with the Internal Revenue Service in 2006, along with business income tax returns filed with the Internal Revenue Service and the Michigan Department of Treasury from 2003 through 2006, demonstrate that the debtors were always the actual owners of the business, and further, controlling federal and state law prohibit Appellees from challenging the veracity of these returns as a matter of law?

- Appellant answers, "Yes."
- Appellees will answer, "No."

b. Did the District Court err in affirming the Bankruptcy Court's error as a matter of law and/or abuse of its discretion when the Bankruptcy Court found that the subject business's limited liability company annual statements filed with the State of Michigan Department of Labor & Economic Growth from 2004 through 2007, which were signed by the debtors as "member" or "partner," did not estop the Appellees from arguing that the debtors transferred their respective 50% ownership interest in the business to the Appellees in 2003?

- Appellant answers, "Yes."
- Appellees will answer, "No."

c. Did the District Court err in affirming the Bankruptcy Court's error as a matter of law and/or abuse of its discretion when the Bankruptcy Court found that debtor, Walter Jamil's, sworn affidavit filed with the Michigan Sixth Judicial Circuit Court (Oakland County) in 2007, which stated that the debtor and his debtor-brother were still the sole owners of the subject business, did not estop the Appellees from arguing that the debtors transferred their respective 50% ownership interest in the business to the Appellees in 2003?

- Appellant answers, "Yes."
- Appellees will answer, "No."

d. Did the District Court err in affirming the Bankruptcy Court's error as a matter of law and/or abuse of its discretion when the Bankruptcy

Court found Appellee, Nibras Jamil, and debtor, Walter Jamil's, testimony credible after also finding that each committed perjury during trial by attesting under oath on the witness stand to forged signatures on Appellees' proposed exhibits, and after also finding a creditor's state court judgment against both debtors non-dischargeable as a result of fraud?

- Appellant answers, "Yes."
- Appellees will answer, "No."

e. Did the District Court err in affirming the Bankruptcy Court's error as a matter of law and/or abuse of its discretion when the Bankruptcy Court found, contrary to the overwhelming weight of the evidence presented at trial, that the debtors each transferred their 50% ownership interest in the business to the Appellees prior to having a $2.8 million state court judgment entered against both of them?

- Appellant answers, "Yes."
- Appellees will answer, "No."

f. Did the District Court err in affirming the Bankruptcy Court's error as a matter of law and/or abuse of its discretion when the Bankruptcy Court failed to issue any decision regarding the consequences of the Court's finding that Appellee, Nibras Jamil, and debtor, Walter Jamil, had committed perjury in attesting under oath on the witness stand to forged signatures on Appellees' proposed exhibits?

- Appellant answers, "Yes."
- Appellees will answer, "No."

## STATEMENT OF THE CASE

This matter consists of consolidated appeals[1] from two adversary proceedings brought in Bankruptcy Court by Appellant, Mark H. Shaprio, Chapter 7 Trustee ("Trustee") for the bankruptcy estates of Debtors, Walter T. Jamil ("Walter") and Eugene J. Thomas ("Eugene") (collectively, "Debtors"), to avoid and recover, pursuant to 11 U.S.C. §§ 548(a)(1)(A), (B), and pursuant to the Michigan Fraudulent Transfer Act, MICH. COMP. LAWS 566.31, *et seq.*, fraudulent transfers of the Debtors' ownership interests in a business to Appellees, Nibras Jamil ("Nibras") and Joanna Thomas ("Joanna").  In his appeal to this Court, the Trustee specifically appeals from the District Court's November 15, 2010 Order Affirming Bankruptcy Court's Orders Of February 4, 2010 And May 13, 2010, Affirming Judgments Entered May 21, 2010, And Denying Cross-Appeals (R. 22)[2] and November 15, 2010 Judgment (R. 23).  The affirmed Bankruptcy Court orders denied the parties' cross-motions for summary judgment (R. 13), and granted the Appellees, Nibras Jamil's ("Nibras") and Joanna Thomas' ("Joanna"), motion for judgment on partial findings pursuant to Fed. R. Civ. P. 52(c) (R. 43).

## STATEMENT OF FACTS

---

[1] The underlying Adversary Proceeding No. 09-06260 was also consolidated with and into Adversary Proceeding No. 09-06259 by the Bankruptcy Court's November 17, 2009 Order For Consolidation Of Adversary Proceedings (R. 3).

[2] Items in the record on appeal are denoted by the Item Number designated for each such item in Appellant's Appendix attached hereto for convenient reference.

The Debtors, Walter and Eugene, are brothers.  (R. 45, Trial Tr. 40, 218-19.)  The Appellees, Nibras and Joanna, are the spouses of Walter and Eugene, respectively. (R. 45, Trial Tr. 40, 218-19.)  In 1996, the Debtors started a business, TBI Properties, LLC ("TBI"), in which each of the Debtors held a 50% ownership interest.  (R. 45, Trial Tr. 42-43, 221.)   Notably, the never-amended 1996 Articles of Organization for TBI do not address the right of a non-member to manage TBI.  (R. 45, Trial Tr. 45-46, 226-29.)  Further, the Debtors never drafted or signed an operating agreement for TBI.  (R. 45, Trial Tr. 45-46, 226-30.)  TBI's sole asset is a parcel of commercial real estate known as 32600 John R. Road, Madison Heights, Michigan.  (R. 45, Trial Tr. 42.)  In 2008, the Debtors listed the TBI property for sale on Loop Net (a multi-list service for commercial brokers) for $1.8 Million, and represented that TBI owned the property free and clear of any liens or mortgages.  (R. 6, Exhibit 5.)  The Appellees and Debtors claimed that the Debtors transferred their respective 50% ownership interests in TBI to the Appellees on October 9, 2003 as "gifts," without receiving any financial consideration in return.  (R. 45, Trial Tr. 43, 224-225; R. 46, Trial Tr. 86; R. 47, Trial Tr. 56.)

In December 2009, Appellant moved for summary judgment under Rule 56(c) alleging that no material facts were in dispute regarding Debtors' fraudulent transfer of their interest in TBI to Appellees.  In support of Appellant's motion for

summary judgment, Appellant presented TBI's business tax returns filed with the IRS between 2003 and 2006. These tax returns unequivocally demonstrated that the Debtors and not the Appellees were the owners of TBI at the times when the returns were filed, and thus, proved that the Debtors did not transfer their interest in TBI in 2003. Further, under State and Federal law, Appellant asserted that Appellees were equitably estopped from challenging the veracity of, or contradicting, the representations made by Debtors on TBI's tax returns which clearly list the Debtors, rather than the Appellees, as the pass-through taxpayers and owners of TBI during the relevant time periods. (R.8, pp. 10-13.) Under Appellant's argument, once Debtors and Appellees were equitably estopped from challenging the veracity of their previously filed Federal and State tax returns, the only evidence remaining was the undisputed evidence presented by Appellant, which unequivocally demonstrated that the Debtors fraudulently transferred their interest in TBI to Appellees. (R. 8, pp. 13-16.) In fact, not only did Appellant rely upon the Debtors' and Appellees' tax returns, annual filings with the State of Michigan and other documentation demonstrating that the Debtors were the actual owners of TBI, but Appellant cited to Appellees' deposition testimony that revealed a stark lack of knowledge as to **any** aspect of TBI's business operations. (R. 8, p. 5.)

The Bankruptcy Court denied Appellant's Motion for Summary Judgment

on February 4, 2010 ruling that there were genuine issues of material fact and further, that "the trustee has not alleged, and there is no evidence to support, that the debtors intended that their representations on their tax returns be relied upon by the trustee or that it was relied upon by the trustee." (R. 13, p. 4.)

The matter proceeded to trial on January 25, 2010. Trial lasted four non-consecutive days, spanning over 4 months, concluding on May 20, 2010. Debtors maintained throughout trial that they had "gifted" their interest in TBI to Appellees. In order to demonstrate that Appellees were not the actual owners of TBI, Appellant presented the following documentary evidence and testimony:

For each year from 1997 through 2008 one of the Debtors signed, in the capacity of "member," or "partner," TBI's Annual Statements filed with the State of Michigan. (R. 49, Pl. Exhibit 1; R. 45, Trial Tr. 47-55, 231-33.) These Annual Statements were never amended. (R. 46, Trial Tr. 65.) Additionally, in TBI's 2003 tax return filed in 2004 (after the Debtors claimed to have gifted TBI to the Appellees), Walter was identified as the "tax matters partner." (R. 49, Pl. Exhibit 2; R. 45, Trial Tr. 76.) The Schedule K-1's for TBI's 2003 tax return, reflecting the allocable share of income and expense for the members, list the Debtors as each being 50% owners. (R. 49, Pl. Exhibit 2; R. 45, Trial Tr. 77, 235-37; R. 46, 56-57.) In TBI's 2004 tax return (filed in 2005), Walter was again identified as the "tax matters partner." (R. 49, Pl. Exhibit 3; R. 45, Trial Tr. 77.) The Schedule K-

4

1's for TBI's 2004 tax return continue to list the Debtors as each being 50% owners. (R. 49, Pl. Exhibit 3; R. 45, Trial Tr. 77-78, 235-37; R. 46, 56-57.) TBI's 2005 tax return listed Walter as the "tax matters partner," and the K-1's again list the Debtors as each being 50% owners of TBI. (R. 49, Pl. Exhibit 4; R. 45, Trial Tr. 81-82, 235-37; R. 46, 56-57.) TBI's 2006 tax return, which was filed on extension in 2007, listed Walter as the "tax matters partner," and the K-1's list the Debtors as each being 50% owners of TBI. (R. 49, Pl. Exhibit 5; R. 45, Trial Tr. 82-84, 235-37; R. 46, 56-57.) Walter signed these tax returns for TBI. (R. 45, Trial Tr. 78.) The information contained in the K-1's was also carried over each year to Walter's and Nibras' personal income tax returns, which they signed in representation to the U.S. government under penalty of perjury that they had examined and, to the best of their knowledge and belief, they were true and accurate and complete. (R. 45, Trial Tr. 79-80.) Walter's and Nibras' 2006 income tax return still listed Walter as the owner of TBI. (R. 49, Pl. Exhibit 7; R. 45, Trial Tr. 89-93.) Eugene and Joanna's 2006 income tax return also still listed Eugene as the owner of TBI. (R. 49, Pl. Exhibit 19; R. 46, Trial Tr. 61.) <u>To get around the inconsistency, at trial, Walter's testimony was that he and Nibras had filed false tax returns</u>. (R. 45, Trial Tr. 94.)

At trial the Appellees also introduced a bank application that listed them as "partners" of TBI on October 6, 2003, which was 3 days before Appellees even

claim the transfer took place. (R. 45, Trial Tr. 191-93.) Upon Appellees presenting testimony on the inconsistent documents, the Bankruptcy Court stopped proceedings and called counsel for the parties into chambers. (R. 45, Trial Tr. 193.) With respect to at least one of the "gift" documents that the Appellees submitted at trial, the Bankruptcy Court determined that it had been forged, and further, that both Nibras and Walter intentionally presented perjured testimony concerning the document. (R. 46, Trial Tr. 118-21; R. 47, Trial Tr. 2, 8-12.) Specifically, the Bankruptcy Court stated:

> What is an outrage is the plainly false testimony of both Mr. and Mrs. Jamil regarding this signature, and it is a false testimony that this Court cannot and will not tolerate. As a result, I'm going to ask counsel to consider in a recess that I'm about to take what consequences, if any, should result from this Court's finding that both Mr. and Mrs. Jamil have deliberately lied to this Court about this signature.

(R. 47, Trial Tr. 12.) After hearing counsel on what should be the consequences of the perjury finding, the Bankruptcy Court deferred its ruling and allowed trial to proceed. (R. 47, Trial Tr. 20.) Thereafter, the Bankruptcy Court failed to make any ruling on the perjury consequences.

The Appellees claimed at trial that the transfer took place in 2003 because TBI's bank believed that the Debtors had transferred ownership of TBI to the Appellees, however when the Appellees' attorney asked the bank officer that handled the TBI account, vice-president Greg Cote, "Who does the bank consider

owners of TBI today?" he answered, "Well, based on some of the documents, it looks like Walt and Gene are owners." (R. 47, Trial Tr. 133, 144-45.) Thereafter, Mr. Cote, who was the Appellees' own witness, was treated as adverse to their position, as denoted by the Bankruptcy Court's statement that "For the record, at this point I am going to let [Appellees' counsel] lead the witness." (R. 47, Trial Tr. 140.)

In December 2006, TBI was a party to a lawsuit in the 6th Michigan Judicial Circuit Court (Oakland County) in which Walter submitted a signed, sworn affidavit stating that "Eugene Thomas and I have owned 100 percent of [TBI] since its creation in 1995." (R. 49, Pl. Exhibit 11-A; R. 45, Trial Tr. 102-07.) TBI's attorney in that lawsuit, Matthew Leitman, testified that 1) it was his understanding that in December 2006 the Debtors owned TBI (R. 46, Trial Tr. 20), and 2) that it was and is his standard practice to meet with clients and review affidavits in detail, explaining to them that it is essential that the affidavit is accurate and it is being signed under penalty of perjury. (R. 46, Trial Tr. 20-22.) He also testified that the affidavit was "drafted based on discussions with [Walter]." (R. 46, Trial Tr. 28.)

During March 2007, the Debtors personally paid Chase Bank $195,177.48 to pay off the mortgage loan on the real property owned by TBI. (R. 49, Pl. Exhibit 20, Check No. 116; R. 45, Trial Tr. 133, 146; R. 46, Trial Tr. 78-79.) They also

7

paid contractors nearly $50,000 in the preceding months to perform work on TBI's building located on the real property. (R. 45, Trial Tr. 135-36.)

During arbitration proceedings in 2008, consistent with the federal tax returns and filings with the state of Michigan, Eugene testified under oath that he and Walter were the sole owners of TBI. (R. 8, Exhibit 4, 5/14/08 Transcript of Eugene Thomas' arbitration testimony at pp.76-77; R. 45, Trial Tr. 117, 222; R. 46, Trial Tr. 45-47; R. 47, Trial Tr. 64-66.)

On August 4, 2008, an arbitration award was rendered in favor of CBW against Debtors in the amount of $2,800,000. TBI's 2007 tax return was filed on extension in October 2008 and for the first time ever, listed Nibras as the tax matters partner rather than Walter. (R. 45, Trial Tr. 86, 88.) Even then, however, a letter from TBI's accountants, Grant, Millman & Johnson, enclosing the 2007 tax returns is addressed to Walter (not Nibras) and Eugene (not Joanna), stating, "Dear Member." (R. 49, Pl. Exhibit 5; R. 45, Trial Tr. 84; R. 46, Trial Tr. 58.) Similarly, Walter and Nibras' joint personal income tax return for 2007 was filed in late 2008, listing Nibras, rather than Walter, as 50% owner of TBI for the first time ever. (R. 49, Pl. Exhibit 8; R. 45, Trial Tr. 86.)

On November 12, 2008, Computer Business World, LLC ("CBW") obtained a judgment ("Judgment') against the Debtors and certain corporate defendants confirming an arbitration award in the amount of $2,800,000, plus interest, in the

case of *Computer Business World, LLC v. Walter Thomas, et al*, Michigan Circuit Court for the County of Oakland, Case No. 08-093586-CK.  (R. 8, Exhibit 1, Judgment; R. 45, Trial Tr. 41).  After entry of the Judgment, the Debtors filed the underlying bankruptcy petitions under Chapter 11 of the Bankruptcy Code and used their positions as debtors in possession to obtain the benefits of a stay of CBW's collection efforts.   During the Chapter 11 bankruptcy cases, the facts regarding the $2,800,000 judgment in favor of CBW against Debtors were also accurately set forth in the Bankruptcy Court's August 5, 2009 Opinion Regarding Defendant Jamil's Motion to Dismiss; the Defendants' Motions for a Protective Order; and the Plaintiff's Motions For Summary Judgment, entered in CBW's Adversary Proceeding Nos. 09-4419 and 09-4420 against the Debtors for non-dischargeability of their debts to CBW.  (R. 8, Exhibit 3.)

Notably, for the first time ever, the Appellees started receiving income from TBI in the spring of 2009, in the amount of $2,500 per month.  (R. 45, Trial Tr. 123; R. 46, Trial Tr. 100; R. 47, Trial Tr. 64-65.)

After close of Appellant's proofs, Appellees moved the Bankruptcy Court to dismiss Appellant's case under Rule 52(c).   The Bankruptcy Court granted Appellees' motion, concluding "that the preponderance of the evidence does establish that the transfer from the debtors to the defendants of their interests in TBI, LLC, did occur in 2003." (R. 48, Trial Tr. 155.)

9

Appellant brings this appeal asserting that: (1) the Bankruptcy Court erred as a matter of law in denying Appellant's Motion for Summary Judgment; (2) the Bankruptcy Court committed clear reversible error by granting Appellees' Motion to dismiss under Rule 52(c); and (3) the Bankruptcy Court committed clear reversible error and abused its discretion because its ruling granting Appellees' Rule 52(c) motion does not comport with the great weight of the evidence presented at trial.

## STATEMENT OF THE STANDARD OF REVIEW

An appellate court:

> review[s] de novo a [trial] court's grant of summary judgment, using the same standard applied by the [trial] court.  Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Court reviews all the evidence, facts, and inferences in the light most favorable to the nonmoving party.  To withstand summary judgment, the non-moving party must present sufficient evidence to create a genuine issue of material fact.  A mere scintilla of evidence is insufficient; 'there must be evidence on which the jury could reasonably find for the [non-movant]."  Summary judgment is appropriately entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Where the law and record makes it appropriate, we may not only reverse the [trial] court's entry of summary judgment, but we may instruct the district court to enter summary judgment against the previously victorious party.

> A different standard is applied to entry of a judgment on partial findings.  The [trial] court is not required to draw any special

inferences, and it is permitted to weigh the evidence and resolve any conflicts therein.  On appeal, we review legal determinations de novo and the relevant findings of fact for clear error.

*In re Petty*, 538 F.3d 431, 439 (6th Cir. 2008) (citations omitted).

## SUMMARY OF THE ARGUMENT

Both the Bankruptcy Court and the District Court's rulings in this matter have, in essence, held that despite income tax returns being sworn by the taxpayer under penalty of perjury, the taxpayer is not equitably estopped from contradicting the contents of those income tax returns in subsequent litigation.

Chapter 7 Bankruptcy Trustees, appointed by the Office of the United States Trustee, necessarily rely on debtors' filed federal income tax returns, and their business's income tax returns, in performing their statutory duties to administer and liquidate bankruptcy estates, including recovery of improperly transferred property.  In this case, Appellant necessarily reviewed and relied upon the income tax returns filed jointly by the Debtors and Appellees, as well as the income tax returns filed by their business, TBI, in deciding to prosecute the underlying adversary proceedings to avoid constructively fraudulent transfers of ownership interests in TBI from the Debtors to Appellees.

The Bankruptcy Court erred as a matter of law in failing to estop Appellees from contradicting those federal income tax returns, and in failing to recognize Appellant's reliance on such returns, when it denied Appellant's motion for

summary judgment based on application of the doctrine of equitable estoppel. The District Court erred in affirming the Bankruptcy Court, having never addressed, much less explained, the basis for such affirmation. (R. 62.)

Additionally, the Bankruptcy Court abused its discretion, and the District Court erred in affirming the Bankruptcy Court, in granting the Appellees' Motion For Judgment On Partial Findings despite 1) the Debtors' ownership of TBI as a matter of law by virtue of their management of TBI and Michigan Limited Liability's requirement that only members may manage a limited liability company in the absence of an operating agreement stating otherwise, and 2) the Bankruptcy Court's declaration that Appellees' witnesses had committed perjury.

## **ARGUMENT**

I.    **Appellant's Motion For Summary Judgment Should Have Been Granted As There Were No Issues of Fact Regarding Debtors' Fraudulent Transfers because Appellees Were Estopped, As a Matter of Law, from Presenting Evidence Contrary to the Representations In Their Personal and Business Federal Tax Returns Filed in 2003, 2004, 2005, and 2006.**

The District Court erred in affirming the Bankruptcy Court denial of Appellant's motion for summary judgment because no genuine issue of material fact existed regarding the Debtors' fraudulent transfers of their interests in TBI to the Appellees. TBI's tax returns filed with the IRS between 2003 and 2006 unequivocally demonstrated that the <u>Debtors</u> were the actual owners of TBI—not the Appellees. TBI's 2003-2006 tax returns identify the Debtors as the members

12

of TBI and show that all of the income from TBI for those years went to the Debtors. Based upon the representations made in TBI's tax returns, which were never amended, the Appellees were estopped as a matter of law from presenting evidence that contradicted TBI's tax returns and arguing that the Debtors gifted their interest in TBI to Appellees in 2003.[3] The elements of equitable estoppel in the Sixth Circuit are:

1) conduct or language amounting to a representation of material fact;
2) awareness of the true facts by the party to be estopped;
3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended;
4) unawareness of the true facts by the party asserting the estoppel; and
5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991) (citation omitted). Under Michigan law, "[a]n equitable estoppel arises where (1) a party by representation, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on this belief, and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts." *Hughes v. Almena Twp*. 771 N.W.2d 453, 469-70 (Mich. App. 2009).

---

[3] The representations on TBI's tax returns are also admissions under FRE 801.

13

In denying Appellant's motion for summary judgment under the doctrine of equitable estoppel, the Bankruptcy Court stated: "there is no evidence to support that the debtors intended that their representations on their tax returns be relied upon by the trustee or that it was relied upon by the trustee." (R. 12, pp. 3-4.) The Bankruptcy Court's ruling erred as matter of law by:

1)  ignoring substantive on-point case law, which states that a party may not claim a benefit from contradicting the information in that party's sworn tax returns filed with the IRS if the party is in effect arguing that he has defrauded the government—which is exactly what Appellees and Debtors did in this case; and

2)  allowing Appellees to manufacture "questions of fact" by presenting self-serving "evidence" in the form of perjured testimony and forged "transfer documents" that all contradict the information represented in the tax returns.

**A.    Michigan case law holds that a party is equitably estopped from contradicting the information in that party's previously filed and sworn tax returns because contradicting the information on the tax returns is an admission of fraud against the government.**

Initially, in denying Appellant's motion for summary judgment, the Bankruptcy Court ignored the compelling holding of *Watling v. Watling,* 127 Mich. App. 624; 339 NW2d 505 (1983), wherein a defendant attempted to argue that monies held in his children's savings accounts, which created significant tax benefits for the parties, were not meant to be gifts to the children, and as such

14

defendant should have access to those savings accounts. Applying the doctrine of equitable estoppel, the Michigan Court of Appeals held that defendant was estopped from even making such an argument because in contradicting the information contained in his tax returns, defendant was admitting to fraud against the Federal Government:

> Defendant's testimony that these accounts were never intended to be gifts would normally preclude the beneficial tax savings under this revenue ruling. **But justice requires us to estop a party from making such a claim. If the evidence on remand shows that defendant claimed tax savings on his income tax forms because of these savings accounts, he will not be heard to argue (absent proof that he has filed an amended return) that he never really intended them as gifts if the applicable statute or ruling in fact requires such an intent. <u>We will not allow a party to claim a benefit at divorce if he is in effect arguing that he has defrauded the government</u>.**

*Id*. at 630 [emphasis added].

Just as the Michigan Court of Appeals applied equitable estoppel to prevent parties from making assertions contrary to prior representations made to the federal government in income tax returns, the Appellees are equitably estopped from asserting that they were TBI's members after October 10, 2003 because any evidence presented to support this assertion blatantly contradicts TBI's tax returns—which unequivocally identify the <u>Debtors</u> as the owners of TBI—and which evidence would also demonstrate fraud upon the IRS by the Appellees.

15

**B.     Appellees' evidence was inappropriately considered by the Bankruptcy Court and should not have been used to create "material questions of fact."**

The Bankruptcy Court's ruling, and the District Court's groundless affirmation of that ruling, is legally flawed because it considered the "evidence" submitted by Appellees which included only self-serving testimony; and "transfer documents" consisting of simple meeting minutes (signed by either the Debtors or the Appellees) and forms titled "memorand[a] of gift" to create material issues of fact.   However, since the Appellees were estopped as a matter of law from contradicting TBI's 2003-2006 tax returns, the evidence submitted by Appellees was inappropriately considered by the Bankruptcy Court.   Further, since TBI's returns showed that the Debtors owned TBI, rather than the Appellees, at times during which 2003-2006 tax returns were submitted, the returns conclusively prove that the Debtors did not transfer their interest in TBI to the Appellees in October 2003 as the Appellees claimed.   As such, there was no evidence the Bankruptcy Court could properly consider to justify a ruling that issues of material fact existed, and such evidence to contradict Appellant's position that the Debtors owned TBI.

**C.     The only evidence properly considered by the Bankruptcy Court unequivocally established that the Debtors fraudulently transferred their interest in TBI to Appellees.**

Appellant's undisputed documentary evidence submitted in support of his motion for summary judgment, included not only TBI's tax returns, but also

16

included: (a) the annual LLC filings with the State of Michigan signed by the Debtors as "members of the LLC:" (b) the arbitration award finding the Debtors committed fraud; (c) the Bankruptcy Court's ruling of nondischargeability of debt due to fraud; (d) the 5/14/08 Transcript of Debtor Eugene Thomas' arbitration testimony wherein he testified under oath during the arbitration <u>that he and Walter were the sole owners of TBI as of May 14, 2008</u>; (e) the 2008 Loop Net listing for the TBI's Madison Heights building, <u>listed by the Debtors</u>, not Appellees; (f) the June 30, 2009 deposition testimony of Joanna Thomas, who demonstrated no knowledge of TBI's business activities; and (g) January 12, 2009 Deposition Transcripts of both Debtors who testified that they used funds from the sale of the CBW entities to pay off TBI's mortgage.  This evidence conclusively established each of the elements necessary for avoidance of the fraudulent transfers pursuant to 11 U.S.C. 548(a)(1)(A) and (B), as well as MCL§ 566.31, *et seq.* as alleged in the Complaints.

    With respect to Count I of the Complaints, in order to avoid the Debtors' transfer of their interests in TBI pursuant to 11 U.S.C. § 548(a)(1)(A), Appellant needed to show that the transfers were made <u>within 2 years</u> before the date of the filing of the petition, and that the Debtors made such transfers with actual intent to hinder, delay, or defraud any entity to which the Debtors were or became, on or after the date that such transfer was made or such obligation was incurred,

17

indebted. *Id*. Here, Debtors' filed their bankruptcy petitions on December 17, 2008. As of two years before that date (i.e., December 17, 2006), according to TBI's tax returns, annual statements filed with the State of Michigan, and admissions of the Debtors in prior testimony, TBI <u>was owned solely by the Debtors</u>. It was only after the adverse arbitration award was issued against Debtors on August 4, 2008 that the Debtors began to claim that they had transferred their interests in TBI to Appellees in 2003. Clearly, however, the undisputed evidence presented by Appellant demonstrated that the Debtors had not transferred their interests in TBI to their wives in 2003, but in 2008, with actual intent to hinder, delay, or defraud CBW, to which the Debtors had become heavily indebted. As such, the Bankruptcy Court should have granted summary judgment on Count I of the Complaints in favor of Appellant under 11 U.S.C. § 548(a)(1)(A).

Similarly, with respect to Count II of the Complaints, in order to avoid the Debtors' transfers of their interests in TBI pursuant to 11 U.S.C. § 548(a)(1)(B), the Appellant needed to show that the transfer was made within 2 years before the date of the filing of the petition, and that the Debtors received less than a reasonably equivalent value in exchange for such transfers; and either intended to incur, or believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured, or made such transfers to or for the benefit of an insider, and not in the ordinary course of business. *Id*. As described

18

above, all of the undisputed evidence in this case demonstrates that the Debtors' interests in TBI were transferred to the Appellees between March 2007 and October 2008, within the two years prior to the Debtors' petition filings. The Appellees admitted that there was no value given in exchange for the transfer of TBI from the Debtors to themselves, instead arguing that the transfers were gifts. Because CBW had commenced arbitration proceedings against the Debtors by the time they transferred TBI to the Appellees, Debtors had reason to know they had incurred debts beyond their ability to pay. Finally, there is no question that Debtors transferred TBI to insiders as the Appellees are their respective wives. Accordingly, the Bankruptcy Court should have granted summary judgment on Count II of the Complaints under 11 U.S.C. § 548(a)(1)(B).

With respect to Count III of the Complaints, in order to avoid a fraudulent transfer under Michigan's Fraudulent Transfer Act, Appellant need to demonstrate that the Debtors made the transfers of their interests in TBI either with actual intent to hinder, delay, or defraud any creditor of the Debtors, or without receiving a reasonably equivalent value in exchange for the transfer or the obligation and the Debtor also believed, or reasonably should have believed, that they would incur debts beyond their ability to pay as they become due. MCL § 566.34. As these elements are virtually identical to those required under 11 U.S.C. § 548(a)(1)(A)

and (B), for the reasons discussed above, Appellant was also entitled to summary judgment under Count III.

To the extent that the transfers of the Debtors' interests in TBI to the Appellees are avoided pursuant to 11 U.S.C. § 548 under Count I and/or Count II, or pursuant to 11 U.S.C. § 544(b) under Count III, then there was no genuine issue of material fact that pursuant to 11 U.S.C. § 550, Plaintiff may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee. As discussed above, there was no dispute that Appellees are the initial transferees of the transfers of the Debtors' interests in TBI. Appellant was entitled to summary judgment against Appellees under Count IV of the Complaints.

## II.    The Bankruptcy Court Committed Clear Error In Granting Appellees' Motion For Judgment On Partial Findings Because The Great Weight of the Evidence Presented at Trial Demonstrates Appellant's Fraudulent Transfer Claim, and Because As A Matter of Michigan Law, By Managing the LLC, the Debtors Are Deemed To Be the Members (Owners) Thereof

Under Bankruptcy Rule 7052 and Rule 52(c) of the Federal Rules of Civil Procedure, a court presiding over a bench trial may involuntarily dismiss an action if the court finds the plaintiff is unable to establish a prima facie case. Even if the plaintiff has established a prima facie case, the court may dismiss the action if the

court is persuaded that the preponderance of the evidence lies in the defendants' favor. *Johnson v. United States Postal Serv.,* 756 F.2d 1461, 1464 (9th Cir. 1985). Accordingly, when a defendant moves to dismiss for insufficiency of the plaintiff's evidence, "it becomes the duty of the court to weigh and evaluate the evidence." *Hersch v. United States,* 719 F.2d 873, 876-77 (6th Cir. 1983) (citation omitted).

Rule 52(c) may be invoked in two cases: (1) A plaintiff may not have demonstrated the elements of his claim either in fact or in law, or (2) the plaintiff's own evidence may have established one of the defendant's defenses as a matter of fact or law. *Eberhardt v. Comerica Bank*, 171 B.R. 239, 243 (E.D. Mich. 1994). Neither of the *Eberhart* conditions existed in the trial below. Specifically, the overwhelming evidence presented by Appellant at trial: (a) unequivocally demonstrated that Debtors fraudulently conveyed their interest in TBI to the Appellees; and (b) did not establish or support any defense presented by Appellees as a matter of fact or law.

### A. The Bankruptcy Court Ignored the Great Weight of the Evidence At Trial Establishing the Elements of Appellant's Claims

Simply, the Bankruptcy Court committed clear error when it ruled "that the preponderance of the evidence does establish that the transfer from the debtors to the defendants of their interests in TBI, LLC, did occur in 2003." (R. 48, Trial Tr. 155). In making this conclusion, the Bankruptcy Court clearly ignored the overwhelming evidence presented at trial demonstrating that at best, the alleged

21

transfer of TBI pursuant to a one-page "Memorandum of Gift" was a transfer <u>in form only</u>, and in substance, at all times thereafter, the Debtors continued on as members of TBI, both legally and factually.

In *Shapiro v. Matouk (In re Hayes)*, 322 B.R. 644 (2005), the Chapter 7 Trustee sought to avoid what the debtor and defendant claimed had been a "sale" of the debtor's property to the defendant, although "stat[ing], 'The Trustee does not believe the 'sale' of the Debtor's household goods to have occurred contemporaneously with the date appearing on Exhibit C. … Nor does the Trustee believe the Debtor and [the defendant] intended to actually transfer title to the items listed from the Debtor to [the defendant].  Upon the conclusion of trial, the Bankruptcy Court wrote in its opinion that "the Court concludes that the alleged sale, allegedly documented …, was a sham undertaken with no real intent to transfer ownership of [the Debtor's] property to [the defendant]."  The Bankruptcy Court reached this conclusion based on certain findings of fact, including:

> (4) *[The defendant] allowed [the Debtor] and her children to keep possession and control of the personal property after the alleged transaction and they maintained full and exclusive use and control of the property.  This is strong evidence that the parties had no actual intent to transfer ownership.*  [Citations omitted.]
> * * *
> Simply put, [the Debtor] and [the defendant] were not credible witnesses.

*Id*. at 647-48 (emphasis added).  Because "[the Debtor] did not *actually* transfer any property to [the defendant]," the Bankruptcy Court held that "the trustee's

fraudulent conveyance and preferential transfer claims must be dismissed. However, for all the same reasons, all of the property … was property of the estate." *Id*. at 648.

Similarly, in this case, the Appellant argued from the outset that whether the transfer documents were executed in 2003 or not, there was never *actually* any intent by the Debtors to transfer TBI to the Appellees until it became necessary to protect that asset from creditors.  As stated by Appellant's counsel in opening argument,

> The evidence will show through all the items that I've already referenced that there was no donative intent by the debtors to convey their membership interest in the LLC – that's TBI Properties, LLC – until after August of 2008 when the – when Ed Pappas issued his arbitration award…. This is really a form over substance claim by the debtors and the defendants, and their remedial efforts to clean up the tremendous paper trail that you will see showing that the debtors were still the owners does not undo the taint of the claimed conveyance back in 2003.

(R. 45, Trial Tr. pp. 26-27.)   Indeed, the overwhelming evidence presented at trial unequivocally demonstrated that the Debtors were the actual and legal owners of TBI well past the 2003 date of the "Memorand[a] of Gift]" allegedly transferring TBI to the Appellees.  As such, the Bankruptcy Court erred as a matter of law and committed clear error when it granted Appellees' motion for judgment on partial findings under Rule 52(c), and the District Court erred in affirming that decision.

Perhaps the most compelling evidence submitted at trial (and also in support of Appellant's motion for summary), was the Debtors' own admissions in sworn testimony that they were still owners of TBI.    In December 2006, TBI was a party to a lawsuit domiciled in the 6th Michigan Circuit Court in which Walter submitted a signed, sworn affidavit stating that "Eugene Thomas and I have owned 100 percent of [TBI] since its creation in 1995."  (R. 49, Pl. Exhibit 11-A; R. 45, Trial Tr. 102-07.)  Additionally, as late as 2008, during arbitration proceedings filed by CBW, Debtor Eugene Thomas testified under oath that he and Walter were the sole owners of TBI.  (R. 6, Exhibit 4, 5/14/08 Transcript of Eugene Thomas' arbitration testimony at pp.76-77; R. 45, Trial Tr. 117, 222; R. 46, Trial Tr. 45-47.)

In TBI's 2003 tax return filed in 2004 (after the Debtors claimed to have gifted TBI to the Appellees), Walter was identified as the "tax matters partner." (R. 49, Pl. Exhibit 2; R. 45, Trial Tr. 76.)  The Schedule K-1's for TBI's 2003 tax return, reflecting the allocable share of income and expense for the members, list the Debtors as each being 50% owners.  (R. 49, Pl. Exhibit 2; R. 45, Trial Tr. 77, 235-37; R. 46, 56-57.)  Again, in TBI's 2004 tax return (filed in 2005), Walter was again identified as the "tax matters partner."  (R. 49, Pl. Exhibit 3; R. 45, Trial Tr. 77.)  The Schedule K-1's for TBI's 2004 tax return continue to list the Debtors as each being 50% owners.  (R. 49, Pl. Exhibit 3; R. 45, Trial Tr. 77-78, 235-37; R. 46, 56-57.)  TBI's 2005 tax return listed Walter as the "tax matters partner," and

the K-1's again list the <u>Debtors as each being 50% owners</u> of TBI.  (R. 49, Pl.

Exhibit 4; R. 45, Trial Tr. 81-82, 235-37; R. 46, 56-57.)  TBI's 2006 tax return,

which was filed on extension in 2007, listed Walter as the "tax matters partner,"

and the K-1's list the <u>Debtors as each being 50% owners</u> of TBI.  (R. 49, Pl.

Exhibit 5; R. 45, Trial Tr. 82-84, 235-37; R. 46, 56-57.)  Walter signed these tax

returns for TBI.  (R. 45, Trial Tr. 78.)  Notably, the information contained in the K-

1's was also carried over each year to Walter's and Nibras' personal income tax

returns, which they signed in representation to the U.S. government under penalty

of perjury that they had examined and, to the best of their knowledge and belief,

they were true and accurate and complete.  (R. 45, Trial Tr. 79-80.)  <u>Walter's and</u>

<u>Nibras' 2006 income tax return still listed Walter as the owner of TBI and</u>

<u>attributed TBI income to Walter</u>.  (R. 49, Pl. Exhibit 7; R. 45, Trial Tr. 89-93.)

<u>Eugene and Joanna's 2006 income tax return also still listed Eugene as the owner</u>

<u>of TBI and attributed TBI income to Eugene</u>.  (R. 49, Pl. Exhibit 19; R. 46, Trial

Tr. 61.)  <u>In a desperate attempt to explain away the inconsistency at trial, Walter's</u>

<u>testimony was that he and Nibras had filed false tax returns</u>.  (R. 45, Trial Tr. 94.)

In the spring of 2009, for the first time ever, the Appellees, instead of the

Debtors, started receiving income from TBI.  (R. 45, Trial Tr. 123; R. 46, Trial Tr.

100; R. 47, Trial Tr. 64-65.)  Further, for each year from 1997 through 2008 one of

the Debtors signed, in the capacity of "member," or "partner," TBI's Annual

Statements filed with the State of Michigan. (R. 49, Pl. Exhibit 1; R. 45, Trial Tr. 47-55, 231-33.) These Annual Statements were never amended. (R. 46, Trial Tr. 65.)

Finally, at trial the Appellees also introduced a bank application that listed them as "partners" of TBI on October 6, 2003, <u>which was 3 days before Appellees even claim the transfer took place</u>. (R. 45, Trial Tr. 191-93.) Indeed, TBI's Bank's Vice President, Greg Cote, upon seeing the Annual Statements and Tax Returns, testified that he now thought Walter and Eugene were probably the owners of TBI. (R. 47, Trial Tr. 133, 144-45.) Thereafter, Mr. Cote, who was the Appellees' witness, was treated as adverse to their position, as denoted by the Bankruptcy Court's statement that "For the record, at this point I am going to let [Appellees' counsel] lead the witness." (R. 47, Trial Tr. 140.) The Bankruptcy Court specifically noted the inconsistencies in the documents. (R. 45, Trial Tr. 193.)

### B. The Debtors were the legal owners of TBI as a matter of law under Michigan's Limited Liability Company Act.

Debtors and Appellees testified that Debtors exclusively "managed" TBI after Debtors allegedly transferred their interest to Appellees. (R. 46, Trial Tr. p. 46, 65, 74, 98, 104; R. 48, Trial Tr. pp. 77, 81, 96.) Accordingly, as mangers, Debtors: (a) ran TBI's day to day operations; (b) hired employees; (c) received reports from financial employees each month); (d) paid TBI's bills; (e) oversaw

26

property maintenance; (f) directed litigation, including the prosecution of the eviction lawsuit against CBW and the defense of circuit court lawsuit/arbitration brought by CBW and; (g) negotiated lease terms.

However, as a matter of law, under Michigan's Limited Liability Company Act, to vest management in non-members, the LLC's articles of organization or operating agreement must expressly delegate management rights to non-members. Specifically, MCL § 450.4401 states that "unless the articles of organization state that the business of the limited liability company is to be managed by managers, **the business of the limited liability company shall be managed by the members**." *Id* (emphasis added). In this case, TBI's articles of organization, entered as an exhibit at trial, vested management with members and did not delegate management to non-members. (R. 49, Pl. Exhibit 1; R. 45, Trial Tr. pp. 45, 141-42, 226-27.) Further, TBI did not have an operating agreement. (R. 45, Trial Tr. pp. 46, 227.)    Thus, as a matter of law, the Debtors' continued management of TBI through 2008 was necessarily in their capacity as Members of TBI. Indeed, consistent with their legal status as members, the Debtors admittedly acted like members rather than managers—by paying off TBI's mortgage loan and maintenance expenses out of their own personal funds. (R. 49, Pl. Exhibit 20, Check No. 116; R. 45, Trial Tr. 133, 146; R. 46, Trial Tr. 78-79.); (R. 45, Trial Tr. 135-36.)  Inexplicably, the Bankruptcy Court summarily ignored and/or rejected

this argument in granting Appellees' motion under Rule 52(c), and the District Court failed to consider the argument in affirming the Bankruptcy Court's decision.

In sum, Appellant submitted credible and compelling documentary and testimonial evidence in support of its fraudulent transfer case, demonstrating that at best, the "gift" documents executed by Appellees and Debtors transferred Debtors' interest in TBI *in form only* and that Debtors continued on as members, owners and operators of TBI well after 2003, and at least into December 2006. Based upon the evidence submitted by Appellant, the Bankruptcy Court committed clear error when it granted Appellees' motion under Rule 52(c).

**III.    The Bankruptcy Court Committed Clear Error and Abused Its Discretion When it Found the Debtors' and the Appellants' Testimony Credible After Also Finding that Defendant Nibras Jamil and Debtor Walter Jamil Intentionally Committed Perjury During Trial, and After Having Entered a Judgment for Non-Dischargeability Against Each of the Debtors as a Result of Fraud, and After Each of the Debtors Had Previously Testified Under Oath that They Were Still the Owners of TBI Years After 2003.**

With respect to at least one of the "gift" documents that the Appellees submitted at trial, the Bankruptcy Court determined that it had been forged, and further, that both Nibras and Walter intentionally presented perjured testimony concerning the document.[4]   (R. 46, Trial Tr. 118-21; R. 47, Trial Tr. 2, 8-12.).  At

---

[4] Perjury is defined in the statute as: "Any person authorized by any statute of this state to take an oath, or any person of whom an oath shall be required by law, who shall willfully swear falsely, in regard to any matter or thing, respecting which such oath is authorized or required, shall be guilty of perjury…". MCL

the outset of the trial, the Bankruptcy Court had also expressed "substantial question about the credibility of the [other Appellees' purported transfer] document." R. 45, Trial Tr. 181.  On the last day of trial, the Bankruptcy Court again noted that "the record also firmly establishes mistakes on the documents in October 2003, the bank documents in November 2003, in the subsequent tax returns, and these mistakes are significant and raise significant questions about the credibility of the documents…"  (R. 48, Trial Tr. 156-157.)  Indeed, the testimony and documents are wholly inconsistent with the prior sworn affidavit of Walter, the prior sworn testimony of Eugene, the Appellees' and Debtors' sworn personal and business income tax returns, and business filings with the State of Michigan.

Once perjury is determined, credibility of the witness becomes a material issue sufficient to support a prosecution for perjury. *See*, 60 Am Jur 2d, Perjury, § 11, p 973. Thus, once making a determination that Walter and Nibras committed perjury, the Bankruptcy Court committed clear error and abused its discretion by giving any credible weight to their testimony and inconsistent documents presented by Appellees.  As discussed *supra*, the Debtors had a history of deceitful conduct, including their fraudulent scheme that lead to the arbitration award in favor of CBW in the amount of $2,800,000.  The Bankruptcy Court itself had determined

---

750.423; MSA 28.665. "In order to constitute perjury under the statute, three things are necessary: 'First: Administration to the respondent of an oath authorized by law, by competent authority; Second: An issue or cause to which facts sworn to are material, and; Third: Willful false statements or testimony by the respondent regarding such facts." 4 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 2000, p 2281.

that CBW's state court judgment against the Debtor was non-dischargeable as a result of fraud. That the Bankruptcy Court found any credibility with the documents and testimony provided by the Debtors and Appellees after finding they committed perjury is perhaps the most erroneous aspect of the entire trial. That the Bankruptcy Court granted Appellees' Rule 52(c) motion in the face of the Debtors' and Appellees' perjured and/or inconsistent testimony and inconsistent and/or falsified documentary evidence was clear error that warrants reversal by this Court.

## CONCLUSION

For the aforementioned reasons, this Court should reverse the lower courts' rulings denying Appellant's motion for summary judgment and/or reverse the lower courts' rulings granting Appellees' Rule 52(c) motion to dismiss, and direct the lower courts to enter judgment on Appellant's claims in Appellant's favor.

Respectfully submitted,

MYERS & MYERS, PLLC

Dated: April 11, 2011        ___/s/ Christopher G. Bovid_____
Roger L. Myers (P49186)
Kelly A. Myers (P49143)
Christopher G. Bovid (P68265)
915 N. Michigan Ave., Ste. 200
Howell, MI 48843
Phone: (517) 540-1700
cbovid@myers2law.com

CASE NO. 10-2646

_____

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____

**MARK H. SHAPIRO, TRUSTEE,**
PLAINTIFF-APPELLANT,
v.
**NIBRAS JAMIL,**
DEFENDANT-APPELLEE,

and

**MARK H. SHAPIRO, TRUSTEE,**
PLAINTIFF-APPELLANT,
v.
**JOANNA THOMAS,**
DEFENDANT-APPELLEE.

_____

Appeal from the United Sates District Court
Eastern District of Michigan (Adv. Case Nos. 09-06259 and 09-06260)

_____

**APPENDIX TO BRIEF OF PLAINTIFF-APPELLANT, MARK H.
SHAPIRO, TRUSTEE**

_____

| **NEUMAN ANDERSON, PC** | **MYERS & MYERS, PLLC** |
|---|---|
| **Kenneth F. Neuman (P39429)** | **Kelly A. Myers (P49143)** |
| **29100 Northwestern Hwy, Ste. 260** | **Christopher G. Bovid (P68265)** |
| **Southfield, MI 48034** | **915 N. Michigan Avenue** |
| **T: (248) 352-5522** | **Howell, MI 48843** |
| **E-mail:** | **T: (517) 540-1700 / F: (517) 540-1701** |
| **kneuman@neumananderson.com** | **E-mail: cbovid@myers2law.com** |

Attorneys for Mark H. Shapiro, Chapter 7 Trustee

**DESIGNATION OF RELEVANT BANKRUPTCY COURT AND DISTRICT COURT DOCUMENTS TO BE INCLUDED IN THE RECORD ON APPEAL**

| Record No. (R. ____) | Description | Adv. Pro. Docket No. |
|---|---|---|
| 1 | Complaint by Myers & Myers, PLLC for Plaintiff, Mark H. Shapiro, Trustee | 1 |
| 2 | Answer to Complaint with Affirmative Defenses by Cummings, McClorey, Davis & Acho, PLC for Defendant | 5 |
| 3 | Order for Consolidation of Adversary Proceedings - No. 09-6260 consolidated with lead case 09-6259 | 9 |
| 4 | Adversary Proceeding Scheduling Order | 10 |
| 5 | Motion for Summary Judgment by Defendant | 11 |
| 6 | Brief in Support of Motion for Summary Judgment by Defendant | 12 |
| 7 | Amended Motion for Summary Judgment by Defendant | 13 |
| 8 | Plaintiff's Response to Defendant's Motion for Summary Judgment | 15 |
| 9 | Plaintiff's Motion for Summary Judgment | 16 |
| 10 | Response to Plaintiff's Motion for Summary Judgment | 17 |
| 11 | Reply Brief in Support of Plaintiff's Motion for Summary Judgment | 20 |
| 12 | Opinion Regarding Cross-Motions for Summary Judgment | 21 |
| 13 | Order Denying Cross-Motions for Summary Judgment | 22 |
| 14 | Plaintiff's Trial Brief Pursuant to LBR 7016-1(b)(14) | 27 |
| 15 | Findings of Fact and Conclusion of Law by Plaintiff | 28 |
| 16 | Findings of Fact and Conclusion of Law by Defendant | 30 |

| 17 | Defendant's Trial Brief | 31 |
|----|-------------------------|-----|
| 18 | Joint Final Pre-Trial Order | 34 |
| 19 | Defendant's Motion to Amend Joint Pretrial Order to Add Crucial Witness | 37 |
| 20 | Defendant's Motion to Expedite Hearing re: Motion To Amend Joint Pretrial Order | 38 |
| 21 | Order Granting Defendant's Motion for Expedited Hearing re: Motion To Amend Joint Pretrial Order | 41 |
| 22 | Plaintiff's Response to Defendant's Motion to Amend Joint Pretrial Order | 43 |
| 23 | Defendant's Reply Brief in Support of Motion to Amend Joint Pretrial Order | 44 |
| 24 | Notice of Adjourned Trial - Continuation of Trial | 46 |
| 25 | Defendant's Memorandum of Law Regarding Plaintiff's Evidence of Unrelated Matters | 47 |
| 26 | Defendant's Memorandum of Law Regarding Plaintiff's Challenge to the Admissibility of the Transfer Documents | 49 |
| 27 | Notice of Adjourned Trial - Continuation of Trial | 51 |
| 28 | Plaintiff's Motion for Escrow Order | 52 |
| 29 | Plaintiff's Ex Parte Motion to Expedite Hearing re: Motion for Escrow Order | 53 |
| 30 | Plaintiff's Brief in Support of Motion for Escrow Order | 54 |
| 31 | Exhibit *Erratum* Exhibit 1 to Plaintiff's Motion for Escrow Order | 55 |
| 32 | Order Denying Ex Parte Motion for Expedited Hearing re: Motion for Escrow Order | 56 |
| 33 | Defendant's Response to Motion for Escrow Order | 57 |
| 34 | Defendant's Motion to Recuse Judge | 60 |
| 35 | Order Denying Motion for Escrow Order | 61 |

| 36 | Order Denying Defendants' Motion for Recusal | 62 |
|---|---|---|
| 37 | Defendant's Motion to Suspend Adversary Proceeding | 63 |
| 38 | Defendant's Motion to Expedite Hearing re: Motion to Suspend Adversary Proceeding | 64 |
| 39 | Order Granting Motion for Expedited Hearing re: Motion to Suspend Adversary Proceeding | 65 |
| 40 | Defendant's Motion for Leave to Appeal re: Order Denying Defendants' Motion for Recusal | 66 |
| 41 | Defendant's Notice of Appeal re: Order Denying Defendants' Motion for Recusal | 67 |
| 42 | Transmittal of Bankruptcy Matter to U.S. District Court | 70 |
| 43 | Judgment for Defendant | 71 |
| 44 | Transcript of 1/25/2010 Hearing re: Cross-Motions For Summary Judgment | N/A |
| 45 | Transcript of 2/18/2010 Trial | N/A |
| 46 | Transcript 3/9/2010 Hearing re: Motion To Amend / Trial | N/A |
| 47 | Transcript of 4/1/2010 Trial | N/A |
| 48 | Transcript of 5/20/2010 Hearing re: Motion To Suspend / Trial | N/A |
| 49 | Plaintiff's Trial Exhibits | N/A |
| 50 | Bankruptcy Court's Trial Exhibit | N/A |

| Record No. (R. ____) | Description | District Ct. Docket No. |
|---|---|---|
| 51 | Order Consolidating Cases | 6 |
| 52 | Appellant, Mark H. Shapiro, Trustee's, Brief On Appeal | 13 |
| 53 | Defendants Joanna Thomas and Nibras Jamil's Brief On Cross-Appeal | 12 |

| 54 | Defendants Joanna Thomas and Nibras Jamil's Response Brief On Appeal | 15 |
|----|------|-----|
| 55 | Appellant/Cross-Appellee, Mark H. Shapiro, Trustee's, Brief On Cross-Appeal | 16 |
| 56 | Defendants Joanna Thomas and Nibras Jamil's Reply Brief On Cross-Appeal | 17 |
| 57 | Appellant, Mark H. Shapiro, Trustee's, Reply Brief On Appeal | 18 |
| 58 | Order Affirming Bankruptcy Court's Orders of February 4, 2010  and May 13, 2010, Affirming Judgments Entered May 21, 2010, and Denying Cross-Appeals | 22 |
| 59 | Judgment | 23 |
| 60 | Notice of Appeal To United States Court of Appeals For The Sixth Circuit | 24 |
| 61 | Notice of Filing of Official Transcript (of 11/10/2010 Appeal Hearing) | 27 |
| 62 | Transcript of 11/10/2010 Hearing  SEE ATTACHED EXHIBIT A | N/A |

CASE NO. 10-2646

_____

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____

**MARK H. SHAPIRO, TRUSTEE,**
PLAINTIFF-APPELLANT,
v.
**NIBRAS JAMIL,**
DEFENDANT-APPELLEE,

and

**MARK H. SHAPIRO, TRUSTEE,**
PLAINTIFF-APPELLANT,
v.
**JOANNA THOMAS,**
DEFENDANT-APPELLEE.

_____

Appeal from the United Sates District Court
Eastern District of Michigan (Adv. Case Nos. 09-06259 and 09-06260)

_____

**CERTIFICATE OF COMPLIANCE**
_____

**NEUMAN ANDERSON, PC**
**Kenneth F. Neuman (P39429)**
**29100 Northwestern Hwy, Ste. 260**
**Southfield, MI 48034**
**T: (248) 352-5522**
**E-mail:**
**kneuman@neumananderson.com**

**MYERS & MYERS, PLLC**
**Kelly A. Myers (P49143)**
**Christopher G. Bovid (P68265)**
**915 N. Michigan Avenue**
**Howell, MI  48843**
**T: (517) 540-1700 / F: (517) 540-1701**
**E-mail: cbovid@myers2law.com**

Attorneys for Mark H. Shapiro, Chapter 7 Trustee

I certify that this Brief complies with the type-volume limitations provided by Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.  This Brief contains no more than 14,000 words of Times New Roman (14 point) proportional type.  The word processing software used to prepare this Brief was Microsoft Word.

Respectfully submitted,

MYERS & MYERS, PLLC

Dated: April 11, 2011          ___/s/ Christopher G. Bovid_____
                               Roger L. Myers (P49186)
                               Kelly A. Myers (P49143)
                               Christopher G. Bovid (P68265)
                               915 N. Michigan Ave.
                               Suite 200
                               Howell, MI  48843
                               Phone:  (517) 540-1700
                               cbovid@myers2law.com

                               NEUMAN ANDERSON, P.C.
                               Kenneth F. Neuman (P39429)
                               29100 Northwestern Hwy, Ste. 260
                               Southfield, MI 48034
                               Phone: (248) 352-5522
                               kneuman@neumananderson.com

CASE NO. 10-2646

_____

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT
_____

**MARK H. SHAPIRO, TRUSTEE,**
PLAINTIFF-APPELLANT,
v.
**NIBRAS JAMIL,**
DEFENDANT-APPELLEE,

and

**MARK H. SHAPIRO, TRUSTEE,**
PLAINTIFF-APPELLANT,
v.
**JOANNA THOMAS,**
DEFENDANT-APPELLEE.

_____

Appeal from the United Sates District Court
Eastern District of Michigan (Adv. Case Nos. 09-06259 and 09-06260)
_____

## CERTIFICATE OF SERVICE
_____

| | |
|---|---|
| **NEUMAN ANDERSON, PC** | **MYERS & MYERS, PLLC** |
| **Kenneth F. Neuman (P39429)** | **Kelly A. Myers (P49143)** |
| **29100 Northwestern Hwy, Ste. 260** | **Christopher G. Bovid (P68265)** |
| **Southfield, MI 48034** | **915 N. Michigan Avenue** |
| **T: (248) 352-5522** | **Howell, MI 48843** |
| **E-mail:** | **T: (517) 540-1700 / F: (517) 540-1701** |
| **kneuman@neumananderson.com** | **E-mail: cbovid@myers2law.com** |

Attorneys for Mark H. Shapiro, Chapter 7 Trustee

STATE OF MICHIGAN        )
                         ) ss.
COUNTY OF LIVINGSTON     )

        Christopher G. Bovid hereby certifies that he is an attorney of record for Appellant, Mark H. Shapiro, in the above-referenced matter; and that he served a copy of the Second Corrected Brief of Appellant, Mark H. Shapiro, Trustee, and this Certificate of Service upon:

Ronald G. Acho, Esq.                    Kenneth F. Neuman, Esq.
CUMMINGS, MCCLOREY, DAVIS &             Jamie K. Warrow, Esq.
ACHO, P.L.C.,                           Neuman Anderson, PC
33900 Schoolcraft Road                  29100 Northwestern Hwy., Ste. 260
Livonia, MI 48150                       Southfield, MI 48034
racho@cmda-law.com                      kneuman@neumananderson.com
                                        jwarrow@neumananderson.com

and all other parties receiving notice via the Court's Electronic Filing System, by electronically filing the same with the Court's Electronic Filing System on this 11th day of April, 2011.

      /s/ Christopher G. Bovid
      Christopher G. Bovid (P68265)

2